THE WORTH CORPORATION, Appellant, *v.* THE METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK, Respondent.

Supreme Court, Appellate Term, First Department, February 17, 1932.

*Sheppard, Jones & Seipp* [*John S. Sheppard* and *Henry G. Seipp* of counsel], for the appellant.

*Henry L. Ughetta* [*Leo F. Potts* of counsel], for the respondent.

UNTERMYER, J. The plaintiff, the owner of a department store, entered into a contract with the Richmond Boro Distributors, Inc., by which that corporation agreed to deliver packages for the plaintiff, to collect any charges due thereon and to pay them to the plaintiff. By that contract it was also required that the Richmond Boro Distributors, Inc., furnish a surety bond indemnifying the plaintiff against loss resulting from the failure of the Richmond Boro Distributors, Inc., to account to the plaintiff for the funds so collected. The complaint alleges that the bond, dated July 6, 1929, required by the contract to be furnished was thereupon executed by the defendant and delivered to the plaintiff. It is further alleged that on or about November 15, 1930, Richmond

Boro Distributors, Inc., was merged with Retail Stores Delivery Corporation, pursuant to section 85 of the Stock Corporation Law of 1923, as amended, and that various sums collected between October 13, 1930, and December 18, 1930, were not paid over to the plaintiff by the Richmond Boro Distributors, Inc., and the Retail Stores Delivery Corporation.

The answer alleges as a complete defense that on June 16, 1930, without notice to the defendant, the Richmond Boro Distributors, Inc., changed its name to Suburban Delivery Corporation and that on November 15, 1930, the Suburban Delivery Corporation was merged with Retail Stores Delivery Corporation. The defendant accordingly alleges that it is not liable for any default in payments by the Suburban Delivery Corporation or the Retail Stores Delivery Corporation.

The plaintiff moved to strike out this defense as insufficient in law. We are agreed that the defense cannot be sustained as a complete defense and that the defendant is liable for any default which occurred previous to the merger on November 15, 1930, notwithstanding that the name of the Richmond Boro Distributors, Inc., was changed to Suburban Delivery Corporation. Such a change of name did not result in any change in the identity of the corporation for which the defendant was bound. The defense should have been stricken out. The question on which we are divided in opinion arises on the partial defense which, under the stipulation of the parties, has relation to defaults which occurred after the company under the then name of Suburban Delivery Corporation merged with the Retail Stores Delivery Corporation.

Stated succinctly, the question thus presented is whether a surety for the operations of one corporation assumes liability for the operations of any other corporation into which it may be merged? The answer to that question does not seem to me to depend on whether, under the statute as it existed previous to 1923 (Stock Corp. Law of 1909, § 15), the possessor corporation held the assets of the merging corporation segregated and subject to the claims of its creditors (*Irvine* v. *N. Y. Edison Co.*, 207 N. Y. 425), or whether, under the statute as it exists to-day, the possessor corporation succeeded to its assets together with its liabilities. (*Guaranty Trust Co.* v. *N. Y. & Q. C. Ry. Co.*, 253 N. Y. 190.) Its determination depends rather on whether the default for which the defendant is sought to be charged is the default of the corporation for which it agreed to be bound. That question, it appears to me, is a question of identity. It is not sufficient that the Retail Stores Delivery Corporation has succeeded to all the rights and has assumed all the liabilities of the Richmond Boro Distributors, Inc., if the corporation which resulted

from that union was not the corporation for whose defaults the defendant assumed responsibility.

When we undertake to consider which of those two corporations survived the merger, I think it is at least clear that the merged corporation, as an independent entity, did not survive. We do not need to determine the precise effect of the merger on the Retail Stores Delivery Corporation, the possessor corporation, but it is significant that both its name and character are preserved. Its assets were merely augmented by the property and reduced by the debts of the merged corporation. By express provision (Stock Corp. Law, § 85) it acquired none of the powers of the corporation with which it merged and there is no reason to believe that it surrendered any power which it might previously exercise. Its corporate structure and organization were unchanged. In every essential particular its identity remained unimpaired, and, conversely, the identity of the merged corporation was absorbed and lost.

To hold that a surety which has assumed responsibility for the operations of a corporation, however small, is, by merger, subjected to liability for the operations of a successor corporation, however large, seems to me to extend the scope of its undertaking beyond reasonable limits. A surety may be willing to guarantee a solvent corporation. It may not be willing to guarantee a corporation which, by merger perhaps with many other corporations, is rendered bankrupt. It may be willing to guarantee a corporation with restricted corporate powers. It may not be willing to guarantee a corporation which, after merger, has far wider powers. It may be willing to guarantee a well-managed corporation conducting operations on a limited scale. It may not be willing to guarantee more extensive operations of a corporation with a record of bad management. Surely it cannot be said that these considerations are without importance to a surety when it executes its bond. " Though there is no personal or human equation in the management of a corporation there is a legal equation." (*New York Bank Note Co.* v. *Hamilton Bank Note Engraving & Printing Co.*, 180 N. Y. 280.)

I find nothing in the statute (Stock Corp. Law, § 85) which applies here. It is the assets and liabilities of the merged corporation which, by operation of law, are transmitted to its successor. The statute does not define the effect upon a surety of a merger of the principal. If the obligee, the plaintiff here, were the corporation merged, I entertain no doubt that under the statute a possessor corporation could enforce this bond. Such a case was *McElwain Co.* v. *Primavera* (180 App. Div. 288), but such is not the situation

here. The statute concerns itself with the devolution of the interests of the parties to the contract — not with extraneous contingencies which may vitiate their rights. Here the default of the principal, the Richmond Boro Distributors, Inc., was an indispensable condition of liability under the defendant's contract of indemnity. The identity of the principal was extinguished on November 15, 1930.

*Matter of Bergdorf* (206 N. Y. 309) is very consistent with these views. It was there decided that the right of the Morton Trust Company to serve as executor under a will was a right which by operation of the statute vested in the Guaranty Trust Company, into which the Morton Trust Company had been merged. But it was recognized that the Morton Trust Company was extinguished in the merger, for the court said: " Our conclusion is that the Morton Trust Company does not exist within or as a part of the Guaranty Company, and the two are not identical." It is true that *Matter of Bergdorf* arose under a statute (Banking Law, §§ 36–40) very similar to section 85 of the Stock Corporation Law as it existed previous to 1923 (Stock Corp. Law of 1909, § 15). But the amendment of 1923 introduced no change affecting the question under consideration here. It did not provide that after merger the possessor corporation and the merged corporation, no matter how unlike in character, must, for all purposes, be treated as the same. On the contrary, the statute was amended only by providing that the possessor corporation, instead of holding the assets of the merged corporation, distinct and separate in subjection to the claims of its creditors, acquired all its assets and became responsible for all its liabilities. Nothing to the contrary was decided in *Guaranty Trust Co.* v. *N. Y. & Q. C. Ry. Co.* (*supra*). After 1923 it was held that the possessor corporation assumed, and previous to 1923 that it did not assume, the liabilities of the merged corporation. After the amendment the possessor corporation was said to be a " successor " of the merged corporation; before the amendment it was only an " assignee." There is no implication here that in either case the merged corporation and its " successor " are identical. If the merged corporation can be said to survive in any sense, it must be in combination with the corporation by which it has been absorbed, and in which it has lost its identity. But the defendant did not indemnify against default in payments by the Richmond Boro Distributors, Inc., and by any successor corporation, but against default by the Richmond Boro Distributors, Inc., alone. Although I am not aware that the precise question has been decided, I think the case of *Bensinger* v. *Wren* (100 Penn. St. 500) is very much in point.

I conclude, therefore, that the defendant is not liable for any default of the Retail Stores Delivery Corporation after that corporation absorbed the Richmond Boro Distributors, Inc., and that, accordingly, the facts pleaded in the answer should be sustained as a partial defense.

So much of the order appealed from as denies motion to strike out affirmative defense reversed, and motion granted, with disbursements to appellant. So much of said order as (by stipulation) denies motion to strike out partial defense, affirmed. Leave is given plaintiff to appeal to the Appellate Division.

LYDON, J., concurs.

FRANKENTHALER, J. (dissenting). The merger of corporations is governed by section 85 of the Stock Corporation Law. Down to 1923 upon the merger of one corporation in another, although the merging corporation acquired all the property and rights of the merged corporation, in the absence of a covenant of assumption by the possessor company that corporation was not liable for any of the debts of the merged corporation, the creditors of the merged company, however, retaining the right to resort to the property of their debtor for satisfaction of their demands. (*Matter of Bergdorf*, 206 N. Y. 309.)

As a result of the merger in this instance all of the rights and property of the merged company vested in the possessor company, and under the 1923 amendment (Stock Corp. Law of 1923, § 85 [Laws of 1923, chap. 787]) " the possessor corporation shall be deemed to have assumed all the liabilities and obligations of the merged corporation and shall be liable in the same manner as if it had itself incurred such liabilities and obligations."

The contract made by the merged company with the plaintiff was thus transferred by operation of law to the possessor corporation, as was also the contract or bond of the defendant, which had been procured by the merged corporation, as an incident to the performance of its contract with the plaintiff. Unless we hold that the possessor company succeeded to the rights of the merged company in the bond given by defendant as well as in the contract, performance of which was secured by the bond, it would follow that all of the rights and assets of the merged company were not transferred to the possessor corporation.

Prior to the 1923 amendment it was held that nothing was lost, forfeited or destroyed by a merger. (*Matter of Bergdorf, supra; McElwain Co.* v. *Primavera,* 180 App. Div. 288.) In the case last cited the surety contended that his liability had ceased on the

merger of the obligee, but the court decided adversely to his contention, Smith, J., saying (p. 296): " There was no personal equation in so far as the original corporation was concerned, since its entire directorate and management might be changed without affecting the guaranty. Its entire capital stock might have changed hands and the policies of the company have been materially altered, so that the reliance on the discretion and prudence of the person extending the credit could not, as suggested in the dissenting opinion, have been a material consideration in making the contract of guaranty." So in the case at hand it is inferable there was no personal equation so far as the merged corporation is concerned, and a decision that the liability of the defendant ceased with the merger would seriously impair the efficacy of the legislation. The possessor company in this case was no mere assignee or purchaser, for the merger was the gathering unto itself and embodying and continuing by that corporation of an existing corporate life. (Cardozo, Ch. J., in *Guaranty Trust Co. v. N. Y. & Queens County Ry. Co.*, 253 N. Y. 190, 201.)

It seems to me that defendant cannot successfully claim that its obligation ended with the merger. The defendant was chargeable with knowledge of the statute when it executed the bond, and in the absence of resort to the agreed upon fifteen-day notice for the termination of its liability, is required to indemnify plaintiff for the defaults subsequent to the merger.

In support of the partial defense it is stated in the majority opinion that the identity of the merged corporation was absorbed and lost in the merger. Assuming, notwithstanding the intimation to the contrary in the *Guaranty Trust Co. Case* (253 N. Y. at p. 201), that the corporate life was ended by the merger in this instance, the same was true in the *Primavera* case, and yet it was held in the latter case that as to the bond the possessor corporation stepped into the shoes of the merged company; the existence of the corporate legal equation, as well as the theory of personal equation, was discarded; and the surety was required to make good to a company as to which it had no contractual obligation.

With respect to the further objection urged in the majority opinion that by merger the surety for the operations of a small corporation may be held liable for the operations of a large corporation; the bond in this case is not such a bond as is referred to in that connection. The operations as to which the defendant is sought to be held are those growing out of the company's dealings with the plaintiff alone. I think there is no presumption that because a possessor corporation may be a big corporation,

with much larger interests than those of the merged corporation, that such a possessor corporation is ill managed or insolvent; and if by merger the big possessor corporation becomes bankrupt it is difficult to imagine how the surety could be prejudiced.

The decision of the Supreme Court of Pennsylvania in the *Bensinger Case* (100 Penn. St. 500), cited by my brethren, is based on common-law principles, and has no relevancy to the question before us.

I think that the matter set up as a partial defense as well as the total defense is insufficient.